**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MBR CONSTRUCTION SERVICES, INC.,** | : | **CIVIL ACTION NO. 1:14-CV-1694** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **IBEW LOCAL NO. 143,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

MBR Construction Services, Inc. ("MBR"), commenced this breach of contract action seeking payment of certain grant funds from IBEW Local No. 143 ("the Union"). Before the court are the parties' respective cross-motions (Docs. 12, 14) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Also pending is the Union's motion (Doc. 20) for leave to amend its answer, a request prompted by MBR's Rule 56 arguments.

## I.   Factual Background and Procedural History[1]

The Union and MBR are parties to a collective bargaining agreement (the "Inside Agreement") and addendum thereto (the "Sound & Communications

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 13, 17, 22, 23). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

Agreement Addendum") covering the period from June 1, 2010 through May 31, 2013. (Doc. 17 ¶¶ 4-6; Doc. 22 ¶¶ 4-6; <u>see also</u> Doc. 16 Exs. A, B). The court will refer to the Inside Agreement and the Sound & Communications Agreement Addendum collectively as the "Collective Bargaining Agreement." (<u>See</u> Doc. 17 ¶ 5; Doc. 22 ¶ 5).

Robert S. Bair ("Bair") was the Union's business manager at all times relevant to this litigation. (<u>See</u> Doc. 17 ¶ 1; Doc. 22 ¶ 1). In a lengthy affidavit, Bair explains that the Union operates "a hiring hall/referral procedure," whereby it serves as a source of electricians for hire to all employers party to the Collective Bargaining Agreement.[2] (Doc. 17 ¶¶ 11-12; Doc. 22 ¶¶ 11-12). When a signatory employer has a project that requires electricians, it must hire Union electricians for the work. (<u>See</u> Doc. 17 ¶¶ 11-13). Signatory employers submit bids for construction projects and, if awarded a contract, will advise the Union of the project's electrician

---

[2] MBR generally denies the opening paragraphs of the Union's statement of facts, contending that they are "irrelevant and immaterial to the issues presented in this lawsuit." (Doc. 22 ¶¶ 11-25). MBR also denies many paragraphs deriving from Bair's affidavit, asserting that they contain "opinion" and "speculation" rather than facts. (<u>See id.</u> ¶¶ 21-23, 27-30, 50-52). To the extent MBR intends its general denials as objections, the same are overruled. An affidavit in support of a Rule 56 motion "must be made on personal knowledge." FED. R. CIV. P. 56(c)(4). Bair explains that the information provided in his affidavit is based on his personal knowledge and experience as the Union's business manager. (<u>See</u> Doc. 16 at 1 & ¶¶ 1-2). MBR offers no meaningful basis for its suggestion that Bair, as the Union's business manager, lacks sufficient personal knowledge of the Union's business operations. (<u>See</u> Doc. 22 ¶¶ 21-23, 27-30, 50-52). Moreover, MBR offers no contrary evidence to support its denials of the Union's statement as required by the Local Rules. <u>See</u> LOCAL RULE OF COURT 56.1. The court finds that the challenged paragraphs of the Rule 56.1 statement are fully and properly supported by Bair's affidavit. <u>See</u> FED. R. CIV. P. 56(c)(4); LOCAL RULE OF COURT 56.1.

needs.  (See id. ¶¶ 20-21).  The Union then dispatches the requested number of electricians for the project.  (Id. ¶ 21).

Prior to Bair becoming business manager, the Union created a job targeting program ("the Target Fund Program") to help signatory employers more effectively compete with non-Union contractors in the bidding process.  (Id. ¶¶ 24-30).  The Union announced the Target Fund Program by letter ("the Signatory Letter") sent to its signatory employers.  (Doc. 13 ¶ 2; Doc. 17 ¶ 40; Doc. 22 ¶ 40; Doc. 23 ¶ 2; see also Doc. 16, Ex. D).  The Union also promulgated a document titled "Rules, Regulations and Guidelines Governing the Local No. 143 Job Target Fund" (the "Rules and Regulations") and provided a copy to signatory employers.  (See Doc. 17 ¶ 32; Doc. 22 ¶ 32; see also Doc. 16, Ex. C).[3]  The Rules and Regulations explain that the program's purpose is "to increase employment opportunities and to maintain the negotiated hourly wages and[] fringe benefits of our members."  (Doc. 16, Ex. C at 1).  The Target Fund Program seeks to accomplish this goal by subsidizing certain designated projects, allowing signatory employers to bid competitively with non-Union contractors.  (See Doc. 17 ¶ 44).

---

[3] MBR generally denies many of the Union's statements of fact regarding the Target Fund Program's scope, purpose, and procedures, asserting without record citation that "'the Fund' was never established."  (See Docs. 23 ¶¶ 26, 28-32, 39-42, 48).  Undisputed record evidence establishes that the job target fund is a program established by the Union, not a literal monetary fund or account.  (See Doc. 23 ¶ 18; see also Doc. 16, Ex. C at 1-2).  The utility of MBR's blanket denial is unclear.  In any event, MBR's contract claim seeks to recover grant monies purportedly due under the Target Fund Program's terms; ostensibly, MBR does not contest the existence of the program upon which it bases its complaint.

The Signatory Letter introducing the Target Fund Program refers to subsidies in the form of "a wage/benefit supplement" as well as "a grant from the Fund." (Doc. 16, Ex. D at 1-2).  The Rules and Regulations likewise contemplate expenditures for both "[g]rants to employers and/or owners" and "[w]age supplements to members dispatched by the Local Union." (Id. Ex. C at 1).  Bair explained that, when he became business manager in 2008, he chose to provide lump-sum subsidies, in the form of grants at job completion, rather than wage supplements. (See Doc. 17 ¶ 51).

Target Fund Program procedure is fairly straightforward.  At the request of a signatory or on its own initiative, the Union will issue a "Notice of Job Designation" letter alerting employers to a designated project. (Doc. 13 ¶ 3; Doc. 17 ¶¶ 48-49; Doc. 22 ¶¶ 48-49, Doc. 23 ¶ 3; see also Doc. 16, Ex. F).  If a signatory employer receives a contract, the employer submits a "Letter of Award" form, advising the Union of its successful bid. (See Doc. 17 ¶¶ 55-56; Doc. 22 ¶¶ 55-56; see also Doc. 16, Ex. G).  The employer must also sign and return a "Letter of Commitment" acknowledging the Target Fund Program's terms and conditions. (Doc. 17 ¶ 56; Doc. 22 ¶ 56; see also Doc. 16, Ex. H).  MBR has twice received Union grants pursuant to the Target Fund Program; these prior grants involved projects at New Cumberland Army Depot and Palmyra Elementary School and collectively totaled $95,500. (Doc. 13 ¶¶ 5-6; Doc. 23 ¶¶ 5-6; see also Doc. 13-4, Ex. D at 5).

The parties followed the above procedure for a "fit-out" project at the Hershey Medical Center Children's Hospital (the "HMC Project"). (See Doc. 17

¶ 66; Doc. 22 ¶ 66).  MBR completed a Request for Designation form, and the Union issued a Notice of Job Designation for the HMC Project.  (See Doc. 13 ¶¶ 7-8; Doc. 23 ¶¶ 7-8; see also Doc. 16, Ex. I at 198-99).  MBR thereafter notified the Union that it had been awarded the HMC Project contract.  (See Doc. 13 ¶ 9; Doc. 17 ¶¶ 77-79; Doc. 22 ¶¶ 77-79; Doc. 23 ¶ 9; see also Doc. 16, Ex. K).  MBR returned a signed Letter of Commitment to the Union and asked the Union to refer electricians to MBR for the project.  (Doc. 17 ¶¶ 79-80; Doc. 22 ¶¶ 79-80; see also Doc. 16, Ex. L).  The Letter of Commitment form for the HMC Project provides, in pertinent part, as follows:

> I am writing you to confirm the agreement that we have reached concerning work to be performed at **HMC Childrens** [sic] ("Job"), for work to be performed by **MBR** ("Employer").  Based on representations made by you, the Union has unilaterally determined that the Job is appropriate for inclusion within the IBEW Local No. 143 Job Target Fund ("Fund").  The Union agrees to make a Fund grant of up to **$50,000** ("Grant").  In no event will the Grant exceed **$50,000** per hour worked on the Job for a maximum number of hours of **N/A** worked by journeyman wiremen and foremen, or the maximum amount of **$50,000**, whichever is less.  You have specifically agreed that the Union reserves the right to solely determine both the conditions precedent to the payment contemplated by our agreement and the time of said payment.  As a condition of payment, you have agreed to submit monthly work reports in such form as required by the Union.

(Doc. 16, Ex. L).  The emphasized portions of the above-quoted language represent Bair's handwritten additions to the form contract.

The Letter of Commitment delineates certain conditions:

> As a condition for the payment of this Grant from the Fund, you agree to the following terms and conditions:
>
> 1.     During the term of the Job, the Employer will not violate any provisions of this Agreement, any provisions set forth in its collective bargaining agreement with the Union.  In the event any such violation of the provisions of this agreement or any provisions of the collective bargaining agreement shall occur, the provisions of this Grant shall be considered null and void and the employers shall be required to return to the Union any and all sums that it may have received from the Fund under this agreement.
>
> 2.     The Employer agrees that it shall not, during the term in which work is performed by it at the Job, become delinquent in making contributions to any employee benefit fund, the Union (for Union dues and assessments), or any authorized check-off and, in the event such delinquency shall occur, this Grant shall be construed as null and void and the Employer shall refund to the Union any and all amounts received by it pursuant to this agreement.

(Id.)  MBR signed and returned to the Union a copy of the Letter of Commitment for the HMC Project.  (See Doc. 17 ¶¶ 77-79; Doc. 22 ¶¶ 77-79; see also Doc. 16, Ex. L).

The Union referred "a significant number" of electricians to the HMC Project at MBR's request.  (Doc. 17 ¶¶ 80-81; Doc. 22 ¶¶ 80-81).  The parties agree that MBR's work on the HMC Project was "substantially completed" by August of 2012.  (Doc. 13 ¶ 11; Doc. 23 ¶ 11).  According to Bair, Union electricians remained on the project job site through as late as August of 2013.  (See Doc. 17 ¶ 83).  MBR

6

denies this fact, but cites no evidence to contravene Bair's affidavit.  (See Doc. 22 ¶ 83).

Between January of 2011 and December of 2012, MBR also contracted to complete certain electrical work at Bishop McDevitt High School in Harrisburg, Pennsylvania (the "McDevitt Project").  (Doc. 17 ¶ 85; Doc. 22 ¶ 85).  During that time, the Union "referred a number of" electricians to the McDevitt Project.  (Doc. 17 ¶ 86; Doc. 22 ¶ 86).  The Union thereafter learned that MBR subleased part of the work for the McDevitt Project to Comstar Technologies, a non-signatory employer.  (See Doc. 17 ¶¶ 87-88; Doc. 22 ¶¶ 87-88; see also Doc. 22 ¶ 89).  Bair concluded that MBR's unauthorized subletting of work to Comstar Technologies violated Section 2.10(b) of the Inside Agreement.  (See Doc. 17 ¶¶ 90-91).  That section proscribes "subletting, assigning or transfer by an individual Employer of any such work in connection with electrical work to any person, firm or corporation not recognizing the [Union]," and states that violation of this prohibition constitutes a "material breach" of the Inside Agreement.  (Doc. 16, Ex. A at 10).  On September 5, 2012, Bair notified MBR's representatives that the Union was filing a grievance against MBR for its violation of Section 2.10(b).  (Doc. 17 ¶¶ 92-93; Doc. 22 ¶¶ 92-93; see also Doc. 16 Exs. M, N).  The parties later settled the dispute, and MBR agreed to have Union members complete the work commenced by Comstar Technologies.  (Doc. 17 ¶ 95; Doc. 22 ¶ 95).

During the same time period, MBR thrice became delinquent in its Union contribution obligations.  (See Doc. 17 ¶¶ 76, 84; Doc. 22 ¶¶ 76, 84).  MBR does not

dispute that it failed to make timely employee benefit fund contributions and to pay

certain wage deductions for the months of May of 2011, October of 2012, and

November of 2012. (See Doc. 17 ¶ 84; Doc. 22 ¶ 84). Indeed, MBR concedes that it

"failed to comply with Sections 3.08, 3.09, 3.10 and 3.11 of the Inside Agreement"

during each of these three months. (Doc. 17 ¶ 84; Doc. 22 ¶ 84). MBR satisfied the

delinquencies shortly after they arose, but the matter nonetheless became the

subject of a civil lawsuit before the undersigned: Bair, on behalf of the employee

benefit funds, brought suit with respect to the 2012 delinquencies, seeking interest

on the late payments, liquidated damages, and attorneys' fees. See Bair v. MBR

Constr. Servs., No. 1:13-CV-706, Doc. 1 (M.D. Pa. Mar. 18, 2013). The parties also

settled the Bair litigation. See id. at Doc. 30.

On December 28, 2012, MBR submitted an invoice to the Union requesting

payment of the $50,000 grant for the HMC Project. (See Doc. 13 ¶ 14; Doc. 23 ¶ 14).

Bair met with MBR representatives on January 7, 2013 and advised that, due to

MBR's various violations of the Collective Bargaining Agreement and Letter of

Commitment, the Union would not pay the $50,000 grant. (Doc. 17 ¶ 100). MBR

challenges Bair's conclusions but does not deny the substance of the January 7,

2013 meeting. (See Doc. 22 ¶ 100). Bair specifically cited both MBR's delinquent

contributions and its unauthorized subletting of the McDevitt Project work in

opining that any obligation to pay the grant "was null and void." (Doc. 17 ¶ 100).

Bair did not present the HMC Project to Union general membership for a funds

disbursement vote in light of MBR's admitted failure to fulfill the grant's

8

preconditions.  (<u>See</u> Doc. 23 ¶¶ 16-17 (citing Doc. 23-1, Ex. A, Bair Dep. 18:5-13 ("Bair Dep. Pt. I")); <u>see also</u> Doc. 13-9, Ex. I, Bair Dep. 71:23-72:18 ("Bair Dep. Pt. II")).

At least two other signatory employers, Herre Bros., Inc. ("Herre"), and ProElectric, were parties to letters of commitment who later became delinquent on their contributions.  (<u>See</u> Doc. 22 ¶¶ 76, 97; <u>see also</u> Doc. 17 ¶ 73).  Neither employer's violation was concomitant with its Target Fund Program obligations. (Doc. 17 ¶¶ 70, 74).  Herre received its last grant in October of 2010, predating its delinquency in August of 2011 by approximately ten months.  (<u>Id.</u>)  ProElectric received its only grant in December of 2010, more than one year before the Union notified it of a perceived delinquency in March of 2012.  (<u>Id.</u>)  Bair testified that, before the HMC Project, he "never had a contractor not follow" Target Fund Program conditions.  (Bair Dep. Pt. II 72:8-18).  The Rule 56 record confirms that MBR is the only employer to be denied a grant for failure to comply with the Letter of Commitment.  (Doc. 17 ¶ 97).

MBR commenced this civil action with the filing of a complaint (Doc. 1) on August 29, 2014.  Therein, MBR asserts claims for breach of contract (Count I) and promissory estoppel (Count II), each stemming from Bair's decision not to pay the $50,000 grant.  The Union filed an answer (Doc. 6) on October 27, 2014, admitting the bulk of MBR's factual allegations.  The Union generally denied MBR's assertion that MBR satisfied all conditions precedent to the Letter of Commitment.  (<u>Id.</u> ¶¶ 20, 24).  The parties timely filed the instant cross-motions and supporting briefs.  (Docs.

12-18).  On July 22, 2015, in response to MBR's summary judgment argument, the Union moved for leave to amend its answer to deny with particularity certain of MBR's allegations.  (Docs. 20-21).  The motions are fully briefed and ripe for disposition.

## II.   Legal Standard

### A.   Rule 15: Leave to Amend Pleadings

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course, within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a Rule 12 motion.  FED. R. CIV. P. 15(a)(1).  Otherwise, a party may amend only with consent of the opposing party or leave of court.  FED. R. CIV. P. 15(a)(2).  The Rule directs the court to "freely give leave when justice so requires."  Id.  The decision whether to grant a motion for leave to amend is committed to the sound discretion of the district court.  See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993) (citing Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989)).  Under this liberal standard, courts will grant leave to amend unless the opposing party can establish undue delay, bad faith on the part of the movant, or prejudice to the non-moving party.  See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); see also Foman v. Davis, 371 U.S. 178, 182 (1962); Combined Ins. Co. of Am. v. Bastian, No. 09-CV-111, 2009 WL 5111794, at *1 (M.D. Pa. Dec. 17, 2009).  The "touchstone" of the court's inquiry is prejudice to the non-moving party.  Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 525-26 (3d Cir. 2004)

(quoting <u>Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of the V.I., Inc.</u>, 663 F.2d 419, 425 (3d Cir. 1981)); <u>Lorenz</u>, 1 F.3d at 1413.

### B.    Rule 56: Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  <u>See</u> <u>Pappas</u>, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently.  <u>See</u> <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008) <u>see also</u> <u>Johnson v. Federal Express Corp.</u>, 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2014).  When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; <u>Lawrence</u>, 527 F.3d at 310 (quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   <u>Discussion</u>

The parties' diametric Rule 56 arguments center on a discrete inquiry: whether MBR is subject to, and fulfilled, certain preconditions to the Letter of Commitment.  MBR maintains that the Union waived any condition precedent defense by not pleading failure to satisfy a precondition with particularity.  (<u>See</u> Doc. 14 at 3-8; Doc. 25 at 4).  The Union concedes that its pleading is deficient but contends that its proposed amendment cures the answer's present deficits.  (<u>See</u> Doc. 24 at 2-3).  The court must first address the Union's motion to amend before assessing the merits of the parties' Rule 56 arguments.

### A.   **Motion for Leave to Amend**

MBR submits that the court must grant summary judgment in its favor because the Union failed to comply with Rule 9(c)'s particularity requirement in answering MBR's breach of contract claim.  (<u>See</u> Doc. 14 at 3-8; Doc. 25 at 4).  More specifically, MBR takes issue with the Union's general denial of MBR's assertion that it satisfied all conditions precedent to the Letter of Commitment.  (<u>See</u> Doc. 14 at 3-8; <u>see</u> <u>also</u> Doc. 1 ¶ 24; Doc. 6 ¶¶ 20, 24).  MBR is correct that Rule 9(c) imposes a heightened pleading standard on parties answering allegations that a condition precedent has been satisfied.  <u>See</u> Fed. R. Civ. P. 9(c).  The Union agrees that the Rule applies to its answer and requests leave to amend to bring its pleading into compliance with the particularity mandate.  (Doc. 21 at 8-10; <u>see</u> Doc. 24 at 2-3).  MBR vigorously opposes the Union's request.  (<u>See</u> Doc. 26 at 1-4).

12

The amendment inquiry generally turns on prejudice to the non-moving party.  <u>Justofin</u>, 372 F.3d at 525-26 (quoting <u>Heyl & Patterson Int'l</u>, 663 F.2d at 425); <u>Lorenz</u>, 1 F.3d at 1413.  The Rule also tasks the court to consider whether the request is a product of undue delay or bad faith on the part of the movant.  <u>See</u> <u>Arthur</u>, 434 F.3d at 204.  MBR's opposition to the Union's request is notably silent in this regard. (<u>See</u> Doc. 26).  Indeed, MBR fails to identify any perceived prejudice should the Union's request be granted.  (<u>See</u> <u>id.</u>)  MBR does not dispute that, notwithstanding a lack of specificity in the Union's answer, MBR has been on notice of the Union's theory since January of 2013.  (<u>See</u> Doc. 21 at 2; Doc. 26 at 4).  Nor does MBR respond to the Union's observation that issues relevant to a condition precedent defense have been fully explored by both parties during discovery.  (<u>See</u> Doc. 21 at 1-8, 10; Doc. 26).

MBR simply argues that Federal Rule of Civil Procedure 16(b)(4) forecloses the Union's proposed amendment.  (<u>See</u> Doc. 26 at 1-4).  Rule 16(b)(4) provides that a scheduling order, once issued, "may be modified only for good cause and with the judge's consent."  FED. R. CIV. P. 16(b)(4).  According to MBR, the Union must first establish its own diligence *apropos* the court's scheduling order before receiving the benefit of the Federal Rules' liberal amendment standard.  (<u>See</u> Doc. 26 at 1-4).

MBR's position is not without support in the law.  The Third Circuit Court of Appeals has not yet resolved the inherent "tension" between these neighboring rules of procedure.  <u>See</u> <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, 614 F.3d 57, 84 (3d Cir. 2010).  Nonetheless, Third Circuit precedent suggests that a request

to amend after the deadline to do so expires must satisfy Rule 16's good cause

requirement.  See E. Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir.

2000); see also Dimensional Commc'ns, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85

(3d Cir. 2005) (nonprecedential) (citing E. Minerals & Chems., 225 F.3d at 340).

Courts within the Third Circuit routinely hold that late-arriving motions to amend

are first subject to the more stringent Rule 16 standard.  See, e.g., Vay v. Huston,

No. 14-769, 2015 WL 4461000, at *1 (W.D. Pa. July 21, 2015); Graham v. Progressive

Direct Ins. Co., 271 F.R.D. 112, 118 (W.D. Pa. 2010); Price v. Trans Union, LLC, 737

F. Supp. 2d 276, 278-79 (E.D. Pa. 2010).

      MBR's argument neglects a crucial distinction between the matter *sub judice*

and the cases it cites: the operative scheduling order in this matter does not contain

a deadline for amending pleadings.  (See Doc. 7).  Rather, the order establishes only

discovery and dispositive motion deadlines, advising that the "court will issue a

complete pretrial and trial schedule, if necessary, upon resolution of the parties'

anticipated dispositive motions."  (Id.)   As this court recently observed, when a

court's scheduling order is silent on the issue of amendment, Rule 15 alone guides

the court's inquiry.  See, e.g., Morrison v. AccuWeather, Inc., No. 14-CV-209, 2015

WL 9315505, at *3 & n.18 (M.D. Pa. Dec. 23, 2015) (Brann, J.).  The court cannot

fairly construe the Union's request as a Rule 16 motion to modify a scheduling

order.  Hence, Rule 15 governs the Union's motion.  See FED. R. CIV. P. 15(a)(2).

      The court discerns no prejudicial effect in granting the Union's motion.  The

proposed amendment does not add unanticipated parties, claims, or facts which

might alter the course of the litigation or require additional discovery.  The Union

seeks only to clarify its answer in a manner consonant with Rule 9(c).  The

amendment will allow the court to assess the merits of the parties' dispute, avoiding

a technical Rule 56 judgment.  The court finds that the interests of justice compel it

to grant the Union's motion (Doc. 20) for leave to amend.  FED. R. CIV. P. 15(a)(2).

### B.    Motions for Summary Judgment

As an initial matter, the court notes the effect of its Rule 15 disposition on

MBR's motion (Doc. 12) for summary judgment.  MBR's Rule 56 argument relies

exclusively on a now-cured technical deficiency in the Union's pleading.  (See Doc.

14 at 3-8).  MBR's summary judgment motion (Doc. 12) is therefore moot.  The

balance of the this memorandum will address the Union's Rule 56 motion and

MBR's opposition thereto.[4]

The Union asserts two principal arguments: first, the Union maintains that

MBR's failure to satisfy conditions precedent to the Letter of Commitment renders

the letter null and void, such that the Union is not obligated to pay the HMC Project

grant to MBR; and second, the Union argues that Section 301(a) of the Labor-

Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, preempts MBR's

common law promissory estoppel claim.  The court addresses each argument

*seriatim.*

---

[4] MBR does not suggest that supplemental briefing or discovery would be
warranted in the event the court grants the Union's motion to amend.  The court
independently finds such leave to be unnecessary.  In responding to the Union's
Rule 56 motion, MBR assumes *arguendo* that leave to amend is granted, and it
substantively responds to the merits of the Union's defense.

1.   *Breach of Contract and Conditions Precedent*

Section 301(a) governs actions "for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a); (see also Doc. 1 ¶ 1).  The statute represents a congressional effort to create a uniform body of law to govern interpretation of labor contracts.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985) (quoting Textile Workers v. Lincoln Mills, 353 U.S. 448, 456 (1957)).  More than half a century ago, the Supreme Court of the United States announced that Section 301(a) is not limited to collectively bargained agreements but includes any contract between an employer and labor organization that is "significant to the maintenance of labor peace between them."  Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28 (1962); see also 48B AM. JUR. 2d, Labor and Labor Relations § 2367.  MBR's claims involve an employer-labor contract that expressly incorporates as conditions precedent various provisions of the parties' Collective Bargaining Agreement.  (See Doc. 1, Ex. C).  The instant contractual dispute falls squarely within the ambit of Section 301(a).

A contractual condition precedent is "an act or event which 'must occur before a duty of performance under an existing contract becomes absolute.'"  Castle v. Cohen, 840 F.2d 173, 177 (3d Cir. 1988) (quoting J. CALAMARI & M. PERILLO, THE LAW OF CONTRACTS § 11-3 (2d ed. 1977)).  To be enforceable, conditions precedent "must be expressed by clear language."  Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1016 (3d Cir. 1980) (citations omitted).  The party asserting breach of a conditional promise bears the burden of proving satisfaction of the

16

precondition.  See McDermott v. Party City Corp., 11 F. Supp. 2d 612, 620-21 (E.D.

Pa. 1998) (citing Mellon Bank, 619 F.2d at 1007-08).  If a condition precedent is not

fulfilled, the non-performing party is relieved of its contractual promise to perform.

See id.

The Union identifies two conditions precedent to its performance and

maintains that MBR's failure to satisfy these conditions relieves the Union of any

obligation to pay the $50,000 HMC Project grant.  (See Doc. 18 at 11-20).  First, the

Union contends that the Letter of Commitment requires MBR to remain compliant

with the Collective Bargaining Agreement during the term of the HMC Project (the

"compliance provision") and that MBR violated this condition by subletting the

McDevitt Project to a non-Union employer and by its delinquency on required

contributions.  (Doc. 18 at 11-12; see Doc. 16, Ex. L at 1).  Second, the Union asserts

that the latter conduct violated the timely benefit fund payment precondition, to

wit: that "during the term in which work is performed by it at the Job," MBR shall

not become delinquent on required contributions to employee benefit funds or

Union dues (the "delinquency provision").  (Doc. 18 at 11-12; see Doc. 16, Ex. L at 1).

The Letter of Commitment identifies the compliance and delinquency

provisions, among others, as "a condition for the payment of this Grant from the

Fund."  (Doc. 16, Ex. L at 1).  The letter further states that the Union alone reserves

the right to "determine . . . conditions precedent to the payment contemplated by

our agreement and the time of said payment."  (Id.)  The court finds that the "clear

language" of the parties' agreement creates two pertinent conditions precedent: the

delinquency provision, requiring the signatory employer to remain current with contributions to the benefit funds and Union dues; and the compliance provision, requiring the employer to remain fully compliant with the Collective Bargaining Agreement.  See Mellon Bank, 619 F.2d at 1016.

MBR does not dispute that the Letter of Commitment creates multiple conditions precedent to the Union's contractual obligation.  (See Doc. 25 at 4-11). Instead, MBR challenges the scope of the conditions precedent and disputes their applicability.  MBR's argument is threefold: first, that the Letter of Commitment, and its conditions precedent, apply exclusively to wage supplements and not to grants; second, that the Letter of Commitment is ambiguous and should be construed against the Union; and third, assuming that the preconditions apply to grants, MBR's noncompliance should be excused because strict application would result in forfeiture disproportionate to MBR's failure.  (See id.)

### a.      **Applicability of Conditions Precedent**

MBR contends that the Signatory Letter, Rules and Regulations, and Notice of Job Designation apply exclusively to wage and benefit supplements or subsidies and that the documents do not pertain to grants.  (See Doc. 25 at 4-7; see also Doc. 22 ¶¶ 32-36, 38, 40-47, 49-51, 53-54).  It follows, according to MBR, that the Target Fund Program and any preconditions attendant thereto do not apply to the grant MBR seeks.  (See Doc. 25 at 4-7)  The Rule 56 record squarely contravenes this assertion.

The Signatory Letter refers interchangeably to both "a wage/benefit supplement" and "a grant from the Fund." (Doc. 16, Ex. D at 1-2). The Rules and Regulations are more explicit, stating that the Target Fund Program encompasses "*any* of the following" before enumerating, *inter alia*, "[g]rants to employers and/or owners" and "[w]age supplements to members dispatched by the Local Union." (Doc. 16, Ex. C at 1 (emphasis added)). The standard Notice of Job Designation form refers only to "a wage/benefit supplement subsidy," (Doc. 16, Ex. F), but the form used for the HMC Project contains an unmistakable, handwritten notation that the job was selected for a "$50,000 GRANT." (Id. Ex. I at 198). Bair explained that, when he became business manager in 2008, he chose to provide one-time subsidies in lieu of wage supplements. (See Doc. 17 ¶ 51).

MBR clearly understood its request to be one for a lump-sum grant subject to the Target Fund Program. The Request for Job Designation form it submitted requests a lump sum of "50,000" with a "N/A" response in both the per hour and estimated hours spaces. (Doc. 16, Ex. I at 199). Likewise, in a Letter of Award notifying the Union of its successful HMC Project bid, MBR responded "N/A $50,000.00 GRANT" in the form's blank "Wage Supplement per hour" section. (Id. Ex. K). MBR's own pleading describes the Target Fund Program as a source of "*either* an agreed upon wage rate supplement or a lump sum grant of money." (Doc. 1 ¶ 11 (emphasis added)).

The Letter of Commitment is the crowning blow to MBR's argument. This document—upon which MBR bases its breach of contract claim—provides that

the Union will "make a Fund *grant* of up to $50,000," subject to enumerated "condition[s] for payment." (See Doc. 16, Ex. L at 1 (emphasis added)). MBR correctly observes that the form contemplates "a maximum number of hours" worked, ostensibly referring to wage supplements, (Doc. 25 at 6), but neglects that the hours worked space contains a handwritten "N/A" designation for the HMC Project. (See Doc. 16, Ex. L at 1). The Letter of Commitment expressly conditions "payment of this *Grant*" on seven conditions precedent, including the delinquency and compliance provisions. (Id. (emphasis added)). The contract itself refutes any contention that conditions precedent do not apply to grants.

In a related argument, MBR asserts that "there is an ambiguity among the various documents" with respect to whether conditions precedent apply to grants. (Doc. 25 at 7). MBR does not elucidate this perceived ambiguity; instead, MBR argues broadly that "any ambiguity must be interpreted against the Union." (Id.) MBR cites the doctrine *contra proferentem*, concluding that the court must construe the parties' agreement against the Union and declare that the conditions precedent do not apply to the HMC Project grant. (Id. (citing Dick Enters., Inc. v. Commw. of Pa. Dep't of Trans., 746 A.2d 1164, 1170 (Pa .Commw. Ct. 2000)).

The Third Circuit Court of Appeals defines contractual ambiguity as "the condition of admitting of two or more meanings, of being understood in more than one way, or referring to two or more things at the same time." Int'l Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Cir. 1990) (quoting Mellon Bank, 619 F.2d at 1011). In determining whether an ambiguity exists, courts consider the language of

the contract itself, alternative meanings proposed by the parties, and any objective evidence offered in support of the proposed constructions.  See Mellon Bank, 619 F.2d at 1011.  When a contract's language "is clear and unambiguous, a court must determine its meaning as a matter of law."  Int'l Union, UAW v. Skinner Engine Co., 188 F.3d 130, 138 (3d Cir. 1999).

The court discerns no ambiguity in the Letter of Commitment.  The court has already held that the parties' agreement clearly establishes a conditional promise by the Union to provide a $50,000 grant for the HMC Project.  See supra.  In this regard, the Letter of Commitment is unequivocal: it identifies a $50,000 grant as the subject of the agreement, vests sole authority in the Union to establish conditions precedent to payment, and expressly incorporates the delinquency and compliance provisions as "condition[s] for the payment of this Grant."  (Doc. 16, Ex. L at 1).  MBR implicit alternate construction—that only supplements are subject to the letter's preconditions—is without support in the plain language of the letter.  MBR adduces no evidence to bolster its summary contention that the Union intended to exempt grants from the letter's conditions.  (See Doc. 25 at 7).  The court concludes that the Letter of Commitment is unambiguous as a matter of law.

### b.      Fulfillment of Conditions Precedent

MBR offers no substantive response to the merits of the Union's defense. (See Doc. 25 passim).  Instead, MBR emphasizes the following undisputed points: (1) MBR was not in current violation of the Letter of Commitment or Collective Bargaining Agreement when the HMC Project was "substantially completed" in

21

August of 2012 and when MBR requested payment of the grant in December of 2012; (2) the Union does not explain why the May 2011 delinquency did not bar two separate grant payments made in September of 2011; and (3) with respect to the McDevitt Project grievance, "no decision was ever issued as to whether the grievance had merit" since the parties settled out of court.  (Id. at 1-2).  MBR concedes its failure to timely make required contributions in October and November 2012, but contends that the late payments postdate substantial completion of the HMC Project and cannot be counted against it.  (Id. at 3).

Uncontroverted record evidence establishes that MBR violated both the Letter of Commitment and Collective Bargaining Agreement repeatedly during the term of the HMC Project.  MBR admits that "[d]uring the work months of May of 2011, October of 2012 and November of 2012, where MBR failed to comply with . . . the Inside Agreement, MBR employed [Union] members on the [HMC Project]." (Doc. 17 ¶ 84; Doc. 22 ¶ 84).  Moreover, MBR concedes that it "subcontracted the telecommunications work" for the McDevitt Project to Comstar Technologies, (Doc. 22 ¶¶ 88-89; see also Doc. 17 ¶ 89), a project underway at the same time as the HMC Project, despite a clear prohibition of such subleases in the Collective Bargaining Agreement.  (See Doc. 16, Ex. A at 10).  That MBR ultimately resolved the Union's grievance by substituting Union members to replace the subcontractors does not expunge the fact of its violation.

MBR also intimates that, because the 2012 delinquencies postdate the substantial completion of the HMC Project, the delinquencies are not disqualifying

violations occurring during the "term of" the project.  (Doc. 25 at 1-2, 6-7).  As

support, MBR cites to Bair's deposition testimony that the Union's receipt of an

invoice is the triggering event for payment of an approved grant.  (See Doc. 13 ¶ 12

(citing Doc. 13-5, Ex. E, Bair Dep. 51:11-19 ("Bair Dep. Pt. III"))).  The relevant

exchange follows:

> Q:    So what triggered [the employer's] right to
>       payments, substantial completion of the project or
>       the invoice?
>
> A:    What I would do is they would send me their
>       invoice.  I would call their foreman and say are you
>       substantially completed?  Are you down to punch
>       list?  And if there was a ton of change order work
>       that were outside the original contract, I would
>       make the payment.  But not all contractors billed
>       timely.
>
> Q:    Okay.  Now if a contractor who is designated to
>       receive a grant is in compliance with all of the
>       terms of its Collective Bargaining Agreement, in
>       other words, they are current with all their dues at
>       the time the project is substantially complete,
>       would the contractor be paid the Target Fund
>       promised to them?
>
> A:    Once they billed me, yes.  They would invoice me,
>       yes.

(Bair Dep. Pt. III 51:3-19).  According to MBR, this testimony establishes that an

employer is entitled to receive a grant, regardless of prior or subsequent violations

of the Letter of Commitment, as long as it is in current compliance with the terms

thereof on the project's substantial completion date.  (See Doc. 13 ¶ 12; Doc. 25 at

1-2, 6-7).

The cited testimony does not support MBR's construction.  Bair did not testify that an employer's obligation to comply with the Letter of Commitment terminates upon substantial completion of the underlying project.  (See Bair Dep. Pt. III 5:3-19).  Nor did he testify that prior violations will be excused as long as an employer is current with its obligations and settles any grievances by the time of substantial completion.  (See id.)  Moreover, assuming *arguendo* that MBR's obligations did cease upon substantial completion in August of 2012, MBR neglects the undisputed fact that it committed two independent violations—the 2011 contribution delinquency and the McDevitt sublease violation—*during* the term of the HMC Project.  (See Doc. 17 ¶¶ 84, 89; Doc. 22 ¶¶ 84, 89).

In sum, MBR has failed to prove that it fulfilled all requisite conditions precedent to the Letter of Commitment.  As a consequence, the court concludes that the Union's obligation to pay the $50,000 grant never arose.  MBR's breach of contract claim fails as a matter of law.

### c.  <u>Excusing Non-Occurrence of Conditions Precedent</u>

MBR alternatively urges the court to excuse its failure to satisfy multiple conditions precedent because strict application of the conditions would cause MBR to suffer a forfeiture disproportionate to its failure.  (See Doc. 25 at 7-11).  The court declines to excuse MBR's recurrent failure to satisfy multiple preconditions to the Letter of Commitment.

As MBR correctly notes, Pennsylvania law disfavors *unfair* forfeitures.  <u>See Acme Mkts., Inc. v. Fed. Armored Express, Inc.</u>, 648 A.2d 1218, 1221-22 (Pa. Super.

Ct. 1994); see also Quandel Grp., Inc. v. Beacon Hill Mortg. Corp., No. 3:10-CV-131, 2008 WL 794891, at *5 (M.D. Pa. Mar. 24, 2008) (citing Acme Mkts., 648 A.2d at 1221-22). Indeed, Pennsylvania law safeguards against such forfeitures. A court will not assume that contract language creates a condition precedent unless such an intent is "expressed by clear language." Mellon Bank, 619 F.2d at 1016. Additionally, Pennsylvania courts apply the Restatement (Second) of Contracts § 229 ("Section 229"), which allows a court to excuse noncompliance with a condition precedent when "disproportionate forfeiture" will otherwise result. Acme Mkts., 648 A.2d at 1221 (citing RESTATEMENT (SECOND) OF CONTRACTS § 229 (AM. LAW. INST. 1981)). The court has already held that the Letter of Commitment is explicit in its intent to establish clear conditions precedent. See supra. Hence, the remaining analysis pertains to Section 229 alone.

Section 229 provides: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." RESTATEMENT (SECOND) OF CONTRACTS § 229. The Restatement's commentary defines disproportionate forfeiture as "the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange." Id. § 229 cmt. b. When a precondition represents a material part of the parties' exchange, Section 229 discretion does not apply. See, e.g., Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 225 n.9 (3d Cir. 1983).

The court finds the conditions precedent to be a material part of the parties' agreed exchange.  See id.  The Union contracted to award a grant of $50,000 to MBR subject *only* to MBR's promise to remain fully compliant with the conditions precedent outlined in the Letter of Commitment.  (See Doc. 16, Ex. L).  To excuse MBR's noncompliance with express preconditions to the Letter of Commitment would transform a bargained-for but *conditional* grant into an unconditional gift. The court declines to relieve MBR of its obligation to comply with the conditions precedent to receiving the grant.  The court will grant summary judgment in favor of the Union and against MBR with respect to MBR's breach of contract claim.

### 2.   *Preemption of State Law Promissory Estoppel Claim*

The Supreme Court of the United States has held that the preemptive power of Section 301(a) extends to state law claims that "depend[] upon the meaning of a collective bargaining agreement."  Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988); see also Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 228-29 (3d Cir. 1995).  The sweeping scope of this statutory preemption extinguishes state law claims sounding in contract and tort alike.  See Allis-Chalmers Corp., 471 U.S. at 210-11; Berda v. CBS Inc., 881 F.2d 20, 23 (3d Cir. 1989).  However, not every claim "tangentially involving a provision of" a labor contract is preempted.  Allis-Chalmers Corp., 471 U.S. at 211.  The Supreme Court announced its Section 301(a) preemption rule as follows: "[W]hen resolution of a state-law claim is *substantially dependent* upon analysis of the terms of an agreement made between the parties in

a labor contract, the claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." Id. at 220 (emphasis added).

MBR answers the Union's preemption argument by claiming that its promissory estoppel claim does not require interpretation of a labor agreement, sparing the claim from Section 301(a)'s preemptive reach. (See Doc. 25 at 14). MBR points to several cases holding that Section 301(a) preemption does not extend to state law claims which only loosely involve a labor agreement. (See id. at 11-14). In Berda v. CBS, Inc., 881 F.2d 20 (3d Cir. 1989), for example, the court held that preemption does not apply when an employee's contract and tort claims derive from separate promises predating the employee's collective bargaining unit membership. See id. at 24-28. And in Stellar v. Allied Signal, Inc., 98 F. Supp. 3d 790 (E.D. Pa. 2015), the district court held that a state law negligence claim for failure to provide a safe working environment avoids preemption because the common law duty to provide such an environment exists independent of any collective bargaining agreement. See id. at 797-805.

MBR's pleading reveals a dispositive distinction between the instant matter and the cases it cites. Each case relied upon by MBR involves duties extraneous to the parties' Section 301(a) contracts, thus surviving preemption. See Berda, 881 F.2d at 24-28; Stellar, 98 F. Supp. 3d at 797-805. In the matter *sub judice*, MBR's promissory estoppel claim rests on *exactly* the same theory of liability and the same derivative responsibilities as its Section 301(a) contract claim, namely: that

27

the Union promised to pay a $50,000 grant and refused to remit payment when requested by MBR.  (Compare Doc. 1 ¶¶ 22-24 with id. ¶¶ 26-29).  MBR's promissory estoppel claim would task the court to interpret and apply the parties' agreements in precisely the same manner as its breach of contract claim.  Hence, Section 301(a) preempts MBR's state law claim.

IV.     **Conclusion**

For the reasons stated herein, the court will deny MBR's motion (Doc. 12), grant both of the Union's motions (Docs. 15, 20), and enter summary judgment in favor of the Union.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 2, 2016